2025 IL App (1st) 240716-U

No. 1-24-0716

Order filed December 19, 2025

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 22 CR 5540 (01) |
| ANZIO PHILLIPS, | ) ) | Honorable Steven G. Watkins, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE C.A. WALKER delivered the judgment of the court.
Justices Hyman and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for attempted murder affirmed where the State presented sufficient evidence regarding intent to kill. The trial court conducted an adequate inquiry into defendant's *pro se* posttrial allegations of ineffective assistance.

¶ 2    Following a bench trial, defendant Anzio Phillips was found guilty of two counts of attempted first degree murder and one count of aggravated discharge of a firearm and sentenced to a total of 27 years in prison. On appeal, defendant (1) challenges the sufficiency of evidence showing his specific intent to kill when he fired at a vehicle's rear tire area, and (2) asserts that the

trial court failed to adequately review his *pro se* posttrial allegations that trial counsel failed to disclose a conflict of interest and investigate cell phone records. We affirm.

¶ 3     Defendant was charged with attempted first degree murder while armed with a firearm (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2022)) (count I), attempted first degree murder while personally discharging a firearm (*id.*) (count II), and aggravated discharge of a firearm towards a vehicle he knew or should have known was occupied (720 ILCS 5/24-1.2(a)(2) (West 2022)) (count III).

¶ 4     Michael Smith testified that around noon on April 11, 2022, he was driving on I-94 near Lansing, Illinois. While in the left lane, Smith looked at his cell phone for a second or two and heard someone honk. Smith realized that he had accidentally swerved into the next lane and observed a silver Chevrolet Impala in the lane next to him. The driver, whom Smith identified in court as defendant, pointed a firearm at Smith through the driver's window. Smith had a clear and unobstructed view of the driver but was unable to see in which hand he held the firearm. The firearm was black and "pointed halfway out" of the driver's window. Smith accelerated. About five seconds later, he heard gunshots hit his vehicle and saw smoke coming from the back of his vehicle. Defendant drove rapidly ahead of Smith, who followed. Smith used his cell phone to call 911 and film defendant's vehicle while reading aloud the license plate number.

¶ 5     Smith's cell phone video was entered into evidence and published. In the video, which is included in the record and has been viewed by this court, Smith reads aloud a license plate number.

¶ 6     Smith further testified that he lost sight of the Impala after it exited the highway. Smith then went to the Chicago Police Department. There, he observed damage to his vehicle. The State published photographs which were entered into evidence and included in the record on appeal. The

photographs, which have been viewed by this court, depict a bullet hole on the rear passenger side of a vehicle near the lower part of the gas tank. On April 4, 2022, Smith identified defendant as the shooter in a photo array.

¶ 7    On cross-examination, Smith testified that there was "heavy" traffic behind him on the highway. When he swerved, he heard two beeps and returned to his lane. He looked behind him, through the rear passenger side window, and saw defendant. Smith looked at defendant for "[m]aybe a good 5 seconds" and saw defendant pointing a firearm at him. Smith never saw the weapon discharge, but he heard four to five shots. Smith chased defendant's vehicle for about 15 miles. Smith confirmed that the video did not depict someone with a weapon.

¶ 8    Anthony Garant testified that his sister Caitlin Garant was defendant's girlfriend at the time of the incident. Caitlin had permission to use a gray Chevy Impala, which belonged to their grandfather, Richard P. Garant. (As members of the Garant family have the same last name, we refer to them by their first names.)

¶ 9    Illinois State Trooper Ryan Donegan testified that he arrested defendant around 1:05 a.m. on April 14, 2022. Defendant was a passenger in a silver Impala with license plate number Y769792, which was driven by a female.

¶ 10   Special Agent Michael Bronge of the Illinois State Police testified that he spoke with Smith a few hours after the shooting. Bronge viewed the recorded video, noting the license plate information, and determined that the vehicle was registered to Richard. On April 14, 2022, Bronge learned that defendant and Caitlin were apprehended in a silver Chevy Impala bearing license plate number Y769792. Bronge later questioned defendant, who gave a phone number ending in 9484

and indicated it was the same cell phone number for Caitlin. Bronge obtained search warrants for the Impala and cell phone records related to the 9484 phone number.

¶ 11    On cross-examination, Bronge testified that no firearms, bullets, or shell casings were recovered from the Impala. The cell phone connected to the number defendant provided was recovered from the vehicle.

¶ 12    Illinois State Police Sergeant Daniel Garcia testified that he processed the Impala and recovered three cell phones. He completed a gunshot residue collection kit for the vehicle's interior. Garcia did not observe any bullet holes in the vehicle. On cross-examination, Garcia confirmed that he did not know who owned the recovered cell phones and that no weapons were recovered while processing the vehicle.

¶ 13    Illinois State Police forensic scientist Ruquiyah Wilson testified that she tested the gunshot residue collection kit which produced negative results for gunshot residue.

¶ 14    FBI Special Agent Nicole Robertson testified that she reviewed data related to the cell phone number ending in 9484, for the period of April 11 to April 14, 2022. According to her findings, on April 11, 2022, at around 12:15 p.m., the number was connecting to a cell phone tower on I-94 near the location of the shooting, with travel patterns consistent with moving northbound along the highway.

¶ 15    On cross-examination, Robertson acknowledged that she could only track the cell phone's location and did not identify the user. The data is generally reliable for estimating time and distance of a cell phone from a cell phone tower, but it cannot pinpoint an exact location. Robertson was not aware of any other phone numbers relating to the case.

¶ 16 The defense recalled Bronge, who acknowledged that no firearms or shell casings were recovered during the investigation. He confirmed that Smith described the firearm as black but gave no details about its size or whether it was pointed inside or outside the vehicle during the shooting.

¶ 17 The trial court found defendant guilty on both counts of attempted murder and one count of aggravated discharge of a firearm. The court had "absolutely no doubt" that defendant discharged the firearm at Smith's vehicle while Smith was driving. Smith testified "very, very credibly" that defendant pointed the firearm at him and discharged it. The court explained that "pointing a gun at somebody and pulling the trigger with a loaded weapon" demonstrated intent to kill, notwithstanding that the bullet hit the passenger side of Smith's vehicle. The court noted that a major part of the investigation involved cell phone tower tracing, which determined that the cell phone number defendant provided to police when arrested was in the vicinity of the incident.

¶ 18 Defendant filed a motion for new trial, arguing that the State failed to prove him guilty beyond a reasonable doubt, which the court denied.

¶ 19 At the sentencing hearing, defendant requested a hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), alleging that Bronge had previously testified against defendant's trial counsel and counsel failed to inform defendant of the situation. Defendant asserted that he would have chosen a different attorney had he known and that the outcome of his case would have been different. When the court asked trial counsel whether the allegation was true, counsel responded, "No." The State also informed the court that prior to trial, it consulted with its chief ethics officer, who indicated that there was no need for the court to admonish anyone regarding a conflict of

interest. Trial counsel then advised the court that Bronge did not testify against him. The court stated it was satisfied that Bronge did not testify against trial counsel.

¶ 20     Defendant also asserted that he asked trial counsel to investigate the cell phone tower "ping" of defendant's cell phone, but counsel did not. Defendant maintained that an investigation would have shown that defendant was not near the scene of the incident and that the cell phone number referenced during trial was not his phone. The court observed that it had heard evidence about other cell phones and noted that defendant was arrested in the vehicle used in the incident, and at that time, the cell phone in question was also in the vehicle. Smith testified "very, very credibly" that defendant pointed a firearm at him and fired, and the court did not believe "one bit" that defendant was not present during the shooting.

¶ 21     Defendant was sentenced to 25 years in prison for attempted murder while armed with a firearm (count I), 27 years for attempted murder while personally discharging a firearm (count II), and 10 years for aggravated discharge of a firearm (count III). The court ordered the sentences to run concurrently but also stated that counts I and III "merge[d]" into count II. Defendant filed a motion to reconsider sentence, which the court denied.

¶ 22     On appeal, defendant argues that the State failed to prove beyond a reasonable doubt that he had the specific intent to kill Smith while firing at the rear of Smith's vehicle.

¶ 23     In considering a challenge to the sufficiency of the evidence, this court examines " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "That standard applies whether the evidence is direct or circumstantial and

does not allow this court to substitute its judgment for that of the trier of fact on issues that involve the credibility of the witnesses and the weight of the evidence." *People v. Jones*, 2019 IL App (1st) 170478, ¶ 25.

¶ 24 A conviction will not be overturned "unless the evidence is so unreasonable, improbable or unsatisfactory" that reasonable doubt exists as to the defendant's guilt. *People v. Wright*, 2017 IL 119561, ¶ 70. We will not reverse a conviction just because the evidence is contradictory or the defendant claims a witness was not credible. *People v. Bonaparte*, 2014 IL App (1st) 112209, ¶ 41. Rather, "[t]he positive, credible testimony of a single witness, even if contradicted by the defendant, is sufficient to convict a defendant." *People v. Sauls*, 2022 IL 127732, ¶ 52. An eyewitness's testimony is insufficient "only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004).

¶ 25 To prove attempted first degree murder, the State must show, in relevant part, that a defendant performed a substantial step towards committing a murder and had the specific intent to kill the victim. 720 ILCS 5/8(4)(a), 9-1(a)(1) (West 2022). Attempt is a specific intent offense, meaning that the defendant desired the outcome with which he is charged. *People v. Guy*, 2025 IL 129967, ¶ 33. Here, defendant only challenges the element of intent.

¶ 26 The State may establish a defendant's intent with circumstantial evidence, as the intent to commit a criminal act is rarely shown with direct evidence. *People v. Reynolds*, 2021 IL App (1st) 181227, ¶ 34. Intent may be inferred from "the character of the attack, the use of a deadly weapon, and the nature and extent of the injuries inflicted." *Id*. Specific intent for attempted murder may be inferred from the use of a firearm, as shooting at a person "supports the conclusion that the

person doing so acted with the intent to kill." (Internal quotation marks omitted.) *People v. Vega*, 2018 IL App (1st) 160619, ¶ 41. An intent to kill "may be inferred if one willfully does an act, the direct and natural tendency of which is to destroy another's life." *People v. Migliore*, 170 Ill. App. 3d 581, 586 (1988). The trier of fact determines intent, and this court will not disturb that finding "unless it clearly appears there is reasonable doubt." *People v. Viramontes*, 2017 IL App (1st) 142085, ¶ 52.

¶ 27    Here, the evidence was sufficient for a rational trier of fact to find that defendant intended to kill. Smith accidentally swerved into defendant's lane, and defendant responded by brandishing a firearm. After seeing the firearm, Smith accelerated. About five seconds later, defendant fired on Smith's vehicle, at close range, hitting the rear passenger side. Defendant's intent to kill can be reasonably inferred by his firing gunshots at an occupied, moving vehicle. See *People v. Thompson*, 2020 IL App (1st) 171265, ¶ 76.

¶ 28    Nonetheless, defendant argues that he only shot at the vehicle's back tires, not at Smith, and a single bullet hole in the vehicle is insufficient to prove intent to kill.

¶ 29    In support, defendant relies on *People v. Trinkle*, 40 Ill. App. 3d 730, 731-32 (1976), *aff'd on other grounds*, 68 Ill. 2d 198 (1977). In that case, the defendant fired at a building, which caused a bullet to travel through a tavern door and injure an individual standing behind the door. *Id*. at 732. The defendant was convicted of attempted murder, but this court found the evidence was insufficient to show the defendant's intent to kill as his actions were directed against a building, not a person. *Id*. at 734. We find *Trinkle* distinguishable. Unlike the defendant in *Trinkle*, defendant shot at an occupied moving vehicle.

¶ 30 We are also not persuaded by defendant's contention that he merely intended to scare Smith for swerving into defendant's lane. Although only one bullet hit Smith's vehicle, "[p]oor marksmanship is not a defense to attempted murder." *People v. Teague*, 2013 IL App (1st) 110349, ¶ 27. Moreover, defendant would have known that discharging his firearm four to five times at an occupied vehicle moving at highway speeds had the direct and natural tendency to destroy human life. See *People v. Stokes*, 293 Ill. App. 3d 643, 650 (1997) (specific intent for attempted murder could be inferred from the defendant's use of a firearm). Although defendant contends that no eyewitness, including Smith, observed defendant discharge the firearm directly at Smith, the State was not required to present eyewitness testimony to prove intent. See *Reynolds*, 2021 IL App (1st) 181227, ¶ 34 (circumstantial evidence is sufficient to establish intent).

¶ 31 Here, the circumstances of the shooting, where Smith heard gunshots, observed smoke coming from his vehicle, and later discovered a bullet hole on his vehicle, sufficed for a rational trier of fact to find that defendant discharged his firearm at Smith and had a specific intent to kill. Therefore, the evidence was not "so unreasonable, improbable or unsatisfactory" as to create reasonable doubt of defendant's guilt of attempted murder. *Wright*, 2017 IL 119561, ¶ 70.

¶ 32 Defendant next contends that the trial court failed to conduct an adequate inquiry into his *pro se* posttrial allegations of ineffective assistance of counsel.

¶ 33 Trial courts must meaningfully consider a defendant's *pro se* claims of ineffective assistance of counsel. *Krankel*, 102 Ill. 2d at 189. However, new counsel is not automatically required for all *pro se* posttrial claims of ineffective counsel. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). The trial court must first review the claim's factual basis. *Id*. at 78. If the claim lacks

merit or pertains only to trial strategy, then the court may deny the *pro se* claim. *Id*. If the claim shows counsel's possible neglect, then the court should appoint new counsel. *Id*.

¶ 34    Our concern is "whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel." *Id*. "[S]ome interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary." *Id*. Trial counsel may explain the facts and circumstances surrounding the defendant's allegations and respond to the trial court's questions. *Id*. "A brief discussion between the trial court and the defendant may be sufficient." *Id*. We review *de novo* whether the trial court's preliminary *Krankel* inquiry was adequate. *People v. Jackson*, 2016 IL App (1st) 133741, ¶ 68.

¶ 35    Defendant first alleges that his trial counsel failed to disclose a conflict of interest with a trial witness.

¶ 36    A defendant has the right to effective assistance of counsel, including counsel who is free of any conflict of interest. U.S. Const., amend. VI, XIV; Ill. Const. 1970 art. I, § 8; *People v. Taylor*, 237 Ill. 2d 356, 374 (2010). A *per se* conflict of interest exists when "certain facts about a defense attorney's status engender, by themselves, a disabling conflict." *Taylor*, 237 Ill. 2d at 374. When defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution, it is a *per se* conflict of interest and grounds for automatic reversal. *Id*. at 374-75.

¶ 37    Here, defendant's allegation that Bronge had testified against trial counsel implied a *per se* conflict of interest. After defendant articulated his claim, the court questioned counsel, who responded that Bronge had not testified against him. Additional factual inquiry was unnecessary.

Counsel's denial of the association refuted defendant's assertion of a *per se* conflict of interest. As such, we find no merit to defendant's contention and appointment of new counsel was unnecessary.

¶ 38    Defendant maintains that the trial court limited its inquiry to one question posed to trial counsel and failed to ask defendant any additional questions relating to Bronge's past association with trial counsel. Defendant also contends that the State's representation that it sought advice from its chief ethics officer demonstrated the need for further investigation of the issue. However, whether a conflicting association between Bronge and trial counsel existed had been resolved by the court's questioning of counsel and the information volunteered by the State. See *People v. Jolly*, 2014 IL 117142, ¶ 38 ("it is critical that the State's participation at that proceeding, if any, be *de minimis*"). As such, there was no need for further inquiry, and remand for another preliminary *Krankel* hearing is not warranted.

¶ 39    Defendant next argues that the trial court failed to conduct an adequate inquiry into his claim that counsel failed to investigate whether defendant's cell phone records would show that he was elsewhere at the time of the shooting and that the one cell phone number introduced at trial belonged to someone else.

¶ 40    Trial counsel must conduct reasonable investigations into possible defenses. *People v. Domagala*, 2013 IL 113688, ¶ 38. The decision not to investigate "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland v. Washington*, 466 U.S. 668, 691 (1984). If the trial court determines that the defendant's issues with counsel's representation pertain to trial strategy, it need not appoint new counsel. *Jolly*, 2014 IL 117142, ¶ 29. However, if the claims show possible neglect of the case, new counsel should be appointed. *Id*. In preliminary *Krankel* inquiries, "a trial court must be

able to consider the merits *in their entirety*." (Emphasis in original.) *People v. Roddis*, 2020 IL 124352, ¶ 61. The court may evaluate the claims based on the insufficiency of the allegations on their face and its personal knowledge of counsel's trial performance. *Moore*, 207 Ill. 2d at 77-78.

¶ 41    Here, during the *Krankel* inquiry, the trial court stated that it heard evidence that other cell phones were recovered. The court explained that defendant had provided the 9484 cell phone number to police following his arrest, and the cell phone was determined to be near the scene of the shooting at the time of the incident. Additional evidence showed that defendant had access to the silver Impala around the time of the shooting. He was also arrested as a passenger of that same vehicle three days after the shooting. Most significantly, Smith, whom the court found credible, identified defendant as the driver of the silver Impala. Based on this record, any investigation into the cell phones would not have rebutted the evidence placing defendant at the scene of the shooting, his access to the silver Impala, and the eyewitness identification. The court's inquiry into defendant's cell phone contentions was therefore adequate given the totality of the evidence connecting defendant to the shooting.

¶ 42    Nonetheless, defendant maintains that the trial court neither asked him follow-up questions nor queried trial counsel about this claim. However, the trial court's method of inquiry is "somewhat flexible." *People v. Fields*, 2013 IL App (2d) 120945, ¶ 40. It was permissible for the court to evaluate the insufficiency of the allegations on their face, especially in context of the trial evidence. *Moore*, 207 Ill. 2d at 77-78. As such, the trial court conducted an adequate inquiry into defendant's posttrial claim of ineffective assistance of counsel and remand is not warranted.

¶ 43    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 44    Affirmed.